Respectfully, on the misrepresentation issue, my client believes that Magistrate Snyder simply lost the force through the trees. It ensures and tells to determine what risk it's going to accept, and it's clear that they're entitled to know the identity, age, and experience of a driver. How many times do you ever call your insurance agent and they don't ask you who's going to be driving the car? It's the most fundamental question that can ever be asked about anyone who's going to insure any kind of an automobile risk. Was he employed at the time? Yes. You had a trial. I'm sorry, Your Honor? You had a trial. We did. And you have findings of fact. We do. And one of the findings is that it wouldn't have made any difference that even if they had informed ICW that Singh, Inderjit Singh, I have the name of the driver, was a driver, they would have waived it. What do you do with that? I mean, we would have to find the – or correct me if I'm wrong about this – what we'd have to find is that the trial judge, the finder of fact, was clearly erroneous as to that. That's correct, Your Honor. If you can't do that, you lose. That's correct. Tell me how we do that. The trial judge ignored uncontradicted evidence and focused on the wrong stuff. That's why I said she lost the force through the trees. Well, when you say ignored, I mean, she was there. She heard it. Maybe she just didn't weigh it as much as you would like to weigh it. Well, recall, Your Honor, that the law says that the issue of materiality is determined solely by the probable and reasonable effect that the truth would have had on the insurer. What the trial judge did here is not look at the mentality of the insurer at the time of issuing. The trial judge looked at the mentality of the insurer after the loss. That was Eric. What she did is she said basically ICW is lax and sloppy, and therefore I can't – I have a hard time seeing based on what they did after the loss. Wasn't there testimony from an ICW agent who said that she had never known for them to refuse an exception? This is at ER 1944 to 1945. Excellent record. 1944 to 45. Do you have those there? I have them in my briefcase over here, Your Honor. Go get them. Let's take a look. This would be in volume eight of the excerpt of the record. That's right. That was my last one, too. ER 1944 to 45. 1940. Well, let's go to the front and figure out what's testifying. Deposition of Karen Kirk. Do you know who Karen Kirk is? She's a claims person, Your Honor. She was not an underwriter who would have day-to-day knowledge as to how often that occurred. Well, you're explaining away what she said. Let's – when you say she's a claims person, she works for ICW? Yes. It says right on page 1946, Ms. Kirk as senior claim rep assigned to this claim. That's what she was. She was not in the underwriting department. Okay. Let's first of all figure out what she said. Okay. And then let's figure out whether what she said could have been relied on. And this is the testimony of 1943 to 45. So this is page 137 of the transcript. The question – this is line 25. To your knowledge, has ICW ever declined a claim on a small fleet trucking program? Has it ever declined a claim based on the fact that an undisclosed driver was operating the vehicle? Your Honor, that's a claim. That's not an applicant for insurance. But this person deals with those claims all the time. There may never have been one. There's no evidence that the ICW program has been – But he's dealt with them in the past, I'm sure, a claims – No. Who else? A claims person. I would – there's no evidence that that's true. That's pure speculation. Isn't it one of their first duties to determine whether there's coverage in an accident? Yes, but the question of misrepresentation, Your Honor, I've been practicing insurance law for 34 years. This is the first time I've seen it come up like this. It's extremely rare. It was a minor. It was a 22-year-old driver, I believe. A 22-year-old driver with two months of experience, yes. And is that – You're saying you think that the child judge made a mistake by not finding that it was material. Your Honor, yes, because the cases say as a matter of law that when you have underwriting guidelines that are supported by the testimony of underwriters, as a matter of law, it's material. Because I really do think that this particular question of materiality is a much narrower question than what the child judge considered it. She considered it looking at numerous factors and didn't focus solely on what the underwriters were thinking or would have thought had the truth been disclosed prior to the loss. It was material. Now, does that – the fact is they asked the question. If they asked the question of the underwriting guidelines, what else could it be? Now, I agree that the law says that the courts are not obligated to accept what they call – what's called the postmortem testimony of the insurer. That's true. But when that testimony is supported by underwriting guidelines that were clearly in existence prior to the loss, then that testimony does have to be accepted. And that's what the law that we've laid out in our brief explains, both Federal and State court. So, because an insurer is entitled to choose for itself what risk is going to entertain, and it has to know what that risk is. That is a fundamental, fundamental basic aspect of any insurance contract. Who are you insuring and what is the risk? And that's what these questions are. Look at Ms. Kirk's testimony. It started on page 1946, about line 11. It says, question, Ms. Kirk, as a senior claims rep assigned to this claim, would you periodically write status reports regarding the issue of the case and the status of litigation? Correct? And she says she'd do a quarterly report. All right. Would you discuss cover issues? She says yes. Do you recall when the possible ______, I'm now reading from 1947, line 2. Do you recall when the possible misrepresentation issue was first mentioned in those reports? And it says, I don't know that I have a specific date. Well, that's fine, but that would be reflective of the reports. Is that correct? I believe it would be. So if it's not included in a particular report, it's safe to say that ICW did not consider this to be an issue at the time. Yes. When did this pop up in the reports? It came up after litigation started when we undertook the deposition of Mr. Gill, and he said I had employed Inderjit Singh for the last, like he said, the eighth, ninth, or tenth month of the prior year. That's when the first evidence of actual misrepresentation became available to ICW. Up until then, all they know is they had issued a policy on January 6th and an accident happened on January 13th by a driver who was not listed. We didn't know until 2000, in the middle of litigation, that Mr. Singh had not been hired during that window of a week. He'd actually been hired months before. There's also an application for employment that's dated in December. Now, Clarendon makes a big to-do out of the fact that it was dated in December. He couldn't have been hired in October. The point, the response to that is G&P was just forming its partnership. These are unsophisticated truck drivers who are gradually working their way towards a business, and the fact that they had the applicant fill out the application in December as opposed to October when they first began employing him shouldn't be controlling. What we're looking at is the fact that this man was an employee. He was an employee. It was admitted in Clarendon's opposition to the summary judgment motion. As far as we're concerned, that's an admission. Judge Coyle adopted that, in essence, by inference in his decision. And there's uncontradicted evidence of it. Where's the evidence that he was first hired during the week after the ICW policy went into effect? There's no evidence of that. Okay. You're about out of time. Why don't we hear from Rosie Townsend? Thank you, Your Honor. Mr. Lipseth? Yeah. I want to first address a simple issue that this Court asked, and that was the question of whether he was employed at the time of the application. The judge, Snyder, found that he was not employed at the time of the application, and, in fact, the proof was not brought that he was. So we never have to get materiality because there was no false application. And that was the finding of the Court. There was no false application because ICW failed to prove there was a false application. So what this Court just discussed with Mr. Wagoner never needs to be reached. I think that has to be made very clear, and that's within the facts. Mr. Wagoner raised the issue and stated that there was an admission. That was an admission for the purpose of a summary judgment motion made in 2000 before completion of discovery, and thereafter there were additional depositions, and, in fact, the application and the other information was obtained based on an order of the Court. Let me slow you down just a little bit and make sure I understand. This was a sort of a bit of an ad hoc partnership, if I understand correctly. They started doing some business, and eventually they became what G&P, the partnership. Is that correct? Well, they each operated individually before that date, and they each owned their own trucks. There was ownership of trucks that they operated individually, but it appears sometime in January of 1998 it became a partnership. And there is evidence that this driver that caused the accident, Mr. Singh, Inderjit Singh, had been driving for the G of the G&P before, right? This is Mr. Gurdial Singh, G is Gurdial. Right, okay. So here they had this preexisting employer-employee relationship. Is that right? The testimony of the deposition was he had driven occasionally for him before. There was no employment. I'm a little confused as to the difference. Well, he had assisted him and driven as a second driver when he needed. It wasn't that he regularly was his regular driver, and the way it works in trucking is you have regular drivers who may drive routes all the time, and then when you run short or you want someone to accompany you, you can hire anybody for a short use, for one day, for a week, for a month, or for just a single route. So the evidence is that Inderjit had been doing occasional work for Mr. G, right? Correct. Then when they became a partnership, when they became G&P, what was Inderjit's status as far as evidence shows? Well, the trial court found that there was no status, and therefore they found that there was no proof that ICW did not prove that on the day they became a partnership, he had all worked for him, and this was a finding of fact by the court. But afterwards, I mean, he was driving a truck that caused the accident, right, for the partnership. What was his status at that time vis-a-vis the partnership? Okay. On the day of the application, the court found that there was no proof. On the day of the accident. He was a co-driver, and he was a two-driver vehicle, so he was one of two drivers in the vehicle. That's not what I'm asking. You had said that you can be an occasional driver or you can be an employee driver. So I'm not asking the question, you know, what was he doing in the truck. I was asking about his employment relationship to the partnership. You distinguish between people being occasional drivers for a route or a day or something and being a regular driver. What was his status? There is nothing in the record to indicate exactly what he was. There was one reference and one deposition that he was driving on an occasional basis, but there's nothing in the record that indicates either way. And no finding? The court just found that he was driving the truck on that day. There was no finding whether he was employed or not employed on the day of the accident. And at what point, in your view, would the partnership have had a responsibility to advise its insurer that it had this person as a driver? Well, the court found, and this is what actually was substantiated by ICW, that there was no legal obligation for GNP to advise when a new driver was hired. Never. The policy has no provision. The application says please tell us or tell us when a new driver, but the application was not made part of the policy, and therefore there was nothing in the contract that required the advisement of a new driver. Sounds odd, doesn't it? That's the way the industry is, because by California law, and we can go into this, the approved insurance forms do not allow one to require an insurer to update on a new driver, unless there's an endorsement to that effect. And they have the right to put an endorsement to that effect, but there is no common law obligation. When you add your son or your daughter or your wife to a policy, you don't have an obligation to tell the insurance company unless they put it in their policy. Well, as I recall, when my sons were minors, they very quickly figured out they existed and excluded them. They were pretty clever about it. So I then had to come in and say, oh, now they are driving age, please add them, and they said that would be a very handsome premium for that. But that's okay. All right. Anything further? Yeah. I just wanted to raise one issue. I believe that, first of all, there are three levels. One, the court found as a factual issue that there was no false application. Secondly, it found, as the court noted, as a factual issue, ICW would have issued the policy, and it didn't just find they were lax and sloppy, which it did find. Judge Schneider looked at what ICD did, and they accepted the excluded drivers. In fact, there was no acceptable driver on the application in the first place. So there was something that was a problem from day one. They accepted new drivers who were unacceptable when they were informed of it, and they renewed the policy. The last thing I just want to make a note is the judge coined in his decision, initially he found summary judgment for Clarendon, and then a motion for reconsideration and re-argument, he found there was a scintilla of evidence, and he was very skeptical, and Judge Schneider did not find that, and he said it's up to the trier of fact, and therefore the trier of fact, which was Judge Schneider, did not find that scintilla of evidence, brought it up to the stage that they met their burden. Thank you, Your Honor. Okay. Yes, we'll give you a minute to talk about this for a second. The application expressly says, quote, do you agree to promptly report all drivers and vehicle changes to your agent to which he or she is to suggest? Your opposing counsel says that was not made part of the policy. No, but it wasn't part of the policy. That doesn't mean it's not an agreement. The statement was made there's no common law obligation. Also, you have a breach of contact claim with your insurant. I do. So you can sue him for breach of contact. I don't know how that affects your relationship to the insurant. I think it affects the relationship because it goes to the question whether it's material to know the truth, and clearly if the application not only asks for the list of all drivers but gets a commitment from the applicant to respond, it's that material. But your opposing counsel says we don't even get to material because there was no obligation to update. Well, first of all, the law gives the CC, I think it's insurance code 331 or whatever it is, the law of concealment. You have an affirmative obligation under the statute to disclose risks. This application confirms that and gives an independent basis. This is a unilateral agreement. But, again, I am not sure how that helps you, Annie. It may be a defense against your insured. It may be a basis for a breach of contact claim that you can bring against your insured. But if it's not in the policy, I don't see how it can affect third parties like claimants or other insurers. Let's look for a second. What we're talking about is they question materiality to the risk, not a policy provision. No, I don't think we are. Well, because, I mean, that's what we talked about earlier, but opposing counsel has shifted the ground. And now you are applying to what he has argued. He says we don't get the materiality because there was no duty. So materiality, and I'm saying sure there was a duty under the insurance code obligation to not conceal under the application itself that was signed, and they said yes. And my answer back to you is how does that affect your relationship to third parties? There may, in fact, be these obligations that are run against the insured that give you a defense against the insured, or give you perhaps a breach of contact claim against the insured for violating these duties. But if it's not in the policy, it can't affect third parties. It can't affect claimants. It can't affect other insurers. I disagree, Your Honor, because the policy is void ab initio if, in fact, there's been misrepresentation or concealment. You have to look at the language. Your answer at that point is we deny coverage. And you already conceded coverage. If the coverage is void ab initio, you say we are not in it at all. And then you'd have to deal with California regulators who come after you and your client, and you would never hear the end of it. But we didn't know about the misrepresentation until two years in litigation. Have you ever tried to withdraw the consent to coverage? I mean, if that's where you were, you said, look, we discovered this horrible fact, and we now, based on this fact we didn't know earlier, we now say we are not liable to anybody. We are not paying the claim. We are not. Yes, what we did is we said that. We did that. Right after the deposition, Mr. Gill, within a couple of days, a week, I can't recall, but a lengthy reservation of rights letter was sent. They didn't pull out of the defense. They reserved rights. Because they had an agreement with Clarin to share. Well, no, I think about it. We were defending our insurers. They were defending theirs. We immediately reserved rights. Within a week, I wrote the letter myself. Yes, they did it as soon as possible. They did it as soon as they learned the information. They didn't have the information before. But that doesn't mean that you can't go back and retroactively say that the policy is not void because of misrepresentation. The fact is we weren't told who the driver was going to be. We have a right to decide for ourselves right or wrong, lax, sloppy, or intelligent. We do or don't want that driver. That is ICW's right. Unless it is given the right to exercise its discretion, its obligation or its right have not been fulfilled. And if, in fact, it has been duped into insuring a 22-year-old inexperienced driver who is driving back to Rhode Island with a load of candy and gets into a wreck in Oklahoma, yes, that's something that if you find it out two years later and you're in a contest with an insurer who has an MCS-90 endorsement and who did insure the risk of interstate travel, we have every right to rescind. You issued an MCS-90 endorsement retroactively, right? Five months after the accident. At the time that the policy was issued, GNP did not have an ICC permit. The application stands right on it, application pending for permit. Six months later. This is another thing that Mr. Lipsius was able to confuse Judge Snyder about. The MCS-90 was issued, I think, in June, whereas the accident was in January. Okay. Why did Mr. Lipsius manage to confuse? Mr. Lipsius, Your Honor, Mr. Lipsius is a very good lawyer. He handles these matters nationwide. I have the honor of having 300 cases against him. I think I've come out better on the first two than I have on this one. In fact, Mr. Lipsius is a very, very good lawyer, and he does this stuff nationwide. It looks to me like both sides here were very well represented. We thank you both. I'm sorry for your loss, Mr. Lipsius. I'm glad we were able to accommodate. You came through just fine. I hope we came through looking. The video on your end is satisfactory. Perfectly, Your Honor. Thank you very much. The only closing comment I would make is the Judge Coyle's comment of the scintilla of evidence, I think, has been misstated slightly. It's history in the case. He did what he did. I think that unduly influenced Judge Snyder is my point. I think if I'm a magistrate and I hear the judge saying that, that's the way I'm going to go, too. But if you go back and look at the evidence and don't lose the force of the treaties, what happened here is this was a misrepresented, concealed risk. Thank you. We didn't have the ability to do that. Thank you very much for your time. I'm sorry. We'll stand submitted. Your Honor, adjourned.  I'll call for the back supplies. Thank you. I'll call for the back supplies.
judges: Kozinski, Farris, Panner